HODGES, Appellee,

v.

HODGES, Appellant.

[Cite as *Hodges v. Hodges,* 175 Ohio App.3d 121, 2008-Ohio-601.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–07–1119.

Decided Feb. 15, 2008.

Thomas Douglas and R. Jeffrey Lydy, for appellee.

Andrea Pietraszak, for appellant.

---

Osowik, Judge.

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, which found appellant guilty of malicious prosecution and illegal wiretapping, awarding damages to appellee in the amount of $21,000 plus attorney fees. For the reasons set forth below, this court reverses in part and affirms in part the judgment of the trial court.

{¶ 2} Appellant, Thomas H. Hodges, sets forth the following seven assignments of error:

{¶ 3} "1: The trial court's finding that plaintiff's only statement or threat to defendant was that 'I am so angry now I could rip your balls off' is against the manifest weight of the evidence.

{¶ 4} "2: The trial court's finding that plaintiff did not own or possess any weapons is against the manifest weight of the evidence.

{¶ 5} "3: The trial court's finding that defendant was not afraid of plaintiff is against the manifest weight of the evidence.

{¶ 6} "4: The trial court's finding that the incarceration and arrest of plaintiff was caused solely by defendant's actions was against the manifest weight of the evidence.

{¶ 7} "5: The trial court erred in finding that defendant maliciously prosecuted plaintiff and exercised abuse of process, and that the prosecution and process of execution were without probable cause.

{¶ 8} "6: The trial court erred in awarding damages to plaintiff for malicious prosecution when the record did not support a finding of malice, an element of the tort of malicious prosecution and the trial court did not make a finding of malice.

{¶ 9} "7: The trial court was unreasonably vague in its finding that defendant's wiretapping and recording of plaintiff's telephone conversations were in violation of the law and illegal as the court did not cite a statute or any other legal authority in reaching this conclusion."

{¶ 10} The following undisputed facts are relevant to the issues raised on appeal. The entirety of this case is rooted in marital difficulties that transpired between appellant and appellee.

{¶ 11} Appellee, a nurse at St. Charles Hospital in Oregon, had been engaged in an extramarital affair with a physician at her place of employment. Appellant had grown suspicious of his wife's conduct and had surreptitiously begun recording her telephone conversations. These recordings confirmed his suspicions about his wife's extramarital conduct. Appellant confronted appellee with his knowledge of the situation, and they subsequently underwent counseling in an effort to preserve their marriage.

{¶ 12} Following completion of their marriage counseling, appellee represented to her husband that she would cease her relationship with the physician. In conjunction with this, appellant discontinued his illegal recordings of her telephone conversations.

{¶ 13} This reconciliation between the parties was short-lived. Appellant's original suspicions about his wife ultimately resurfaced. Appellant resumed his clandestine recordings of his wife's telephone conversations in a misguided effort to obtain information.

{¶ 14} Appellant's second round of recordings of his wife's telephone conversations verified that the relationship with the mystery physician had resumed. This revelation caused appellant to be extremely agitated and emotional. This disclosure set into motion a series of imprudent actions by both parties, culminating in the matter at hand.

{¶ 15} After discovering that his wife had surreptitiously resumed contact with the physician, appellant paid a rash visit to his wife's parents. By all accounts, appellant had enjoyed a cordial relationship with his wife's parents. Appellant disclosed to his wife's father the information that he had learned through the recorded conversations.

{¶ 16} Appellee's female cousin, also a physician at St. Charles, was acquainted with the male physician with whom appellee was involved. In addition, this cousin utilized her position at St. Charles to facilitate and relay covert communications between appellee and the physician-paramour. The cousin was present at the home of appellee's parents when appellant arrived. Clearly recognizing the nature of the compromising information likely to be disclosed, the cousin aggressively took painstaking efforts to derail the visit. Her efforts did not prevail, and appellant relayed to his father-in-law the situation between appellee and appellant.

{¶ 17} On August 12, 2004, appellant went to the home of his wife's parents. A very heated exchange transpired between appellant and his wife's cousin. Subsequently, appellant conversed with his father-in-law and revealed controversial information to him about his daughter's extramarital conduct.

{¶ 18} Appellee was tipped off, while performing a shift at the hospital, that her husband had made this visit to her parents. In the interim, appellant had returned home and called the sheriff's department to report domestic threats made against him by his wife. An Ottawa County Sheriff's Deputy responded to appellant's home to investigate. While the sheriff's deputy was at appellant's home discussing these matters with him, appellee called appellant's cellular phone in a fit of anger over the visit to her parents.

{¶ 19} Enraged at her husband's actions in discussing these matters with her parents, appellee engaged in an ill-advised verbal tirade against her husband. In the course of her cell phone rant, appellee told her husband, among other things, that she was going to "rip his balls off." This particular threat was conceded by appellee herself. The responding Ottawa County Sheriff's Deputy was standing next to appellant when the threat was made. Appellant repeated the threat verbatim to the deputy simultaneous to his wife's issuing it.

{¶ 20} As a result of these events and an investigation into them, the sheriff's deputy determined that there was probable cause to arrest appellee for domestic threats against her husband.

{¶ 21} Appellee was arrested during her shift at St. Charles and released on bond the following day. Appellant was present at the bond hearing, and he requested and received a temporary protection order against appellee. The case

subsequently went to trial in the Ottawa County Municipal Court. Appellee was acquitted.

{¶ 22} In the wake of her acquittal on the underlying criminal charge, appellee filed a civil suit against appellant for illegal wiretapping and malicious prosecution. Following the civil trial, appellant was judged to have committed malicious prosecution and illegal wiretapping. He was found liable for damages to appellee. Damages were awarded to appellee in the amount of $21,000 plus attorney fees. Appellant filed a timely notice of appeal.

{¶ 23} In his first assignment of error, appellant contends that the trial court's judgment concluding that appellee's only threat was "I am so angry I could rip your balls off" was against the manifest weight of the evidence. In support, appellant places determinative reliance on his testimony that his wife also threatened to "just kill myself, Amanda and you" on several occasions in the course of their deteriorating marriage.

 {¶ 24} Trial court findings of fact are presumed to be correct and are given great deference upon review by an appellate court. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. The rationale justifying this axiomatic standard of review stems from the fact that the trial judge is best suited to view the witnesses, observe their demeanor, and utilize these first-hand observations in weighing the credibility of the evidence and testimony. *Bd. of Trustees of Springfield Twp. v. Anderson,* 6th Dist. No. L–06–1014, 2007-Ohio-1530, 2007 WL 949762. Given these guiding legal principles, judgments of fact supported by some competent, credible evidence will not be reversed by a reviewing court unless they are clearly against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

██ {¶ 25} We have carefully reviewed the record for any support of the proposition that appellee made other threats to appellant beyond the conceded threat to "rip [appellant's] balls off." There is nothing beyond speculation to refute the court's conclusion that this was the only threat made.

{¶ 26} There was no relevant corroborating evidence in support of the additional alleged threats made by appellee beyond appellant's own testimony. By contrast, appellee herself conceded the other threat. The mere fact that appellee conceded being in an agitated state at the time she made the one threat does not suffice to establish that the other alleged threats were made, in the absence of additional compelling evidence. While it is entirely plausible that appellant's recitation of additional threats is accurate, we cannot say based upon the record of the evidence that the disputed finding of fact went against the manifest weight of the evidence. We find appellant's first assignment of error not well taken.

{¶ 27} In appellant's second assignment of error, he asserts that the trial court's finding that appellee did not own or possess weapons went against the manifest weight of the evidence. The record is devoid of any evidence that appellee has ever owned, trained with, or in any fashion utilized firearms. By contrast, the record clearly establishes that appellant was the sole registered owner of the firearms. Although appellee may have been aware of where her husband stored his firearms, there is no evidence that she was ever voluntarily provided with keys or surreptitiously obtained keys and/or access to the storage location. We find no law or authority suggesting that ownership and possession of firearms by one spouse should be construed as legal co-ownership and/or possession by the non-owning spouse.

{¶ 28} The record is devoid of any evidence that appellee ever owned, accessed, trained on, or utilized the disputed firearms owned by her husband. There is no evidence suggesting that appellee ever handled or accessed these weapons with or without authorization of her husband. Given these facts, we cannot say that the disputed finding that appellee did not own or possess weapons went against the manifest weight of the evidence. We find appellant's second assignment of error not well taken.

{¶ 29} In appellant's third assignment of error, he asserts that the trial court's finding that he was not in fear of appellee went against the manifest weight of the evidence.

{¶ 30} The record clearly establishes that appellant reported to law-enforcement authorities on several occasions that his wife had made physical threats against him. On August 12, 2004, appellant reported domestic threats by his wife to the Ottawa County Sheriff's Department. The investigating deputy went to appellant's home and interviewed him. During this interview, appellee called appellant's cell phone and threatened him while he was standing next to the investigating deputy. Appellant repeated the threat verbatim to the deputy as it was being made. Appellee admits making this threatening statement. Based upon his professional experience, as well as his investigation, the investigating deputy determined that there was probable cause to file a charge of domestic threatening against appellee, requiring her arrest by operation of law. The record encompasses ample evidence in support of the deputy's probable-cause determination.

{¶ 31} Appellee goes into abundant detail regarding the perceived indignity of being arrested, the unpleasant procedures occurring while being processed into jail, the less-than-luxurious accommodations, and being housed with criminals. Appellee fails to recognize that she had likewise been charged with a criminal

offense, was processed and housed in the local jail in conformity with standard procedures and protocols, and was not entitled to bypass those procedures.

{¶ 32} Subsequent acquittal does not negate probable cause at the time of arrest. The record clearly establishes that appellant reported to police authorities domestic threats made by his wife. The record reflects that the investigating deputy was present with appellant when the domestic threat of physical violence appellee confesses to making was issued. The record unambiguously reflects that appellant represented to authorities fear for his physical safety and was granted a temporary protection order against appellee.

{¶ 33} There is ample evidence in the record in support of the probable-cause determination against appellee. This overwhelming weight of the evidence in the record contradicts the trial court's finding that appellant did not fear appellee. Subsequent acquittal is not relevant. Appellee's dissatisfaction with criminal processes and procedures is not relevant. The weight of objective evidence contravenes the trial court's finding that appellant did not fear appellee on August 12, 2004. We find appellant's third assignment of error well taken.

{¶ 34} In his fourth assignment of error, appellant claims that the trial court's finding that appellee's arrest and incarceration were caused solely by appellant's actions was against the manifest weight of the evidence. As discussed above, the record reflects that appellant reported to law enforcement authorities that his wife had engaged in domestic threats against him. The Ottawa County Sheriff's Department investigated the matter. An experienced deputy was conducting an in-person interview of appellant when appellee threatened to "rip [appellant's] balls off." Appellee admits making this threat. The deputy determined that probable cause existed to have appellee arrested for domestic threats. Appellee was later arrested.

{¶ 35} The record of evidence clearly establishes that the conduct of appellee herself culminated in her arrest. She threatened physical violence upon her husband. He reported it and conveyed his fear to law enforcement. Appellee's own actions and reactions resulted in her arrest. It is contrary to the record of evidence to suggest otherwise. We find appellant's fourth assignment of error well taken.

{¶ 36} In his fifth assignment of error, appellant maintains that the trial court erred in determining that appellant maliciously prosecuted appellee based upon its disputed determination that appellee's domestic-threats arrest and prosecution occurred without probable cause.

{¶ 37} It is well established that a trial court's legal conclusions are not afforded the same deference as findings of fact. Rather, matters of law are

reviewed on appeal pursuant to a de novo basis. *State v. Hackett,* 171 Ohio App.3d 235, 239, 2007-Ohio-1868, 870 N.E.2d 235.

{¶ 38} In order to prevail on a malicious-prosecution claim, one must establish (1) malice in instituting a prosecution, (2) a lack of probable cause, and (3) failure of the prosecution. *Crosset v. Marquette,* 1st Dist. Nos. C–060148 and C–060180, 2007-Ohio-550, 2007 WL 423586.

{¶ 39} In order to resolve appellant's fifth assignment of error, we need review only the second element needed to establish malicious prosecution. As we determined in response to appellant's third assignment of error, the record contains ample evidence in support of the Ottawa County Sheriff Deputy's finding of probable cause for domestic threats against appellee. The testimony of the investigating officer, the testimony of appellant, and the concessions of appellee constitute ample evidence of probable cause to support the arrest of appellee for domestic threats against appellant.

{¶ 40} As this court held in *Vesey v. Connally* (1960), 112 Ohio App. 225, 16 O.O.2d 146, 175 N.E.2d 876, "since the guilt of the accused is not the same thing as probable cause, the fact that the accused is later acquitted and found not guilty does not negate the probable cause and is not even prima facie evidence of want of probable cause." This principle is precisely on point. The record establishes that probable cause existed for appellee's arrest. Therefore, appellee cannot prevail on a claim of malicious prosecution as a matter of law. We find appellant's fifth assignment of error well taken.

{¶ 41} In appellant's sixth assignment of error, he claims that the trial court erred in awarding appellee damages for malicious prosecution. The record of evidence cannot support appellee's claim of malicious prosecution. Therefore, the awarding of damages under that claim was in error. Given our holding in response to appellant's fifth assignment of error, we must necessarily find the sixth assignment of error well taken.

{¶ 42} In his seventh assignment of error, appellant claims that the trial court erred in finding his recordings of appellee's telephone conversations illegal. Just as appellee conceded making the verbal threat to appellant, appellant conceded secretly recording certain telephone conversations of appellee.

{¶ 43} Both state and federal law expressly prohibit placing a recording device on one's phone to secretly record the calls of another household member. 18 U.S.C.S. 2510 et seq. and R.C. 2933.51 through 2933.66. Appellant's suspicions of his wife's extramarital activities do not serve as a defense to illegal wiretapping. The fact that his suspicions were well founded does not negate his guilt. We find appellant's seventh assignment of error not well taken.

130

{¶ 44} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed in part. Appellant and appellee are each ordered to pay one half of the cost of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.

Judgment affirmed in part
and reversed in part.

HANDWORK and SHOW, JJ., concur.